**SINIRA FUIMAONO LUTU, Plaintiff**

**v.**

**MUAMUA SEMEATU and SALA SEMEATU, Defendants**

High Court of American Samoa
Land and Titles Division

LT No. 9-87

October 25, 1990

Before REES, Associate Justice, and TAUANU'U, Chief Associate Judge.

Counsel: For Plaintiff, Afoa L.S. Lutu
For Defendants, Charles V. Ala'ilima

On October 15, 1990, the Court held a hearing to determine whether defendants were entitled to compensation for improvements they built on the disputed property.

Defendants built a house on the land which we have held to belong to plaintiff. When they built this house the defendants appear to have believed in good faith that the land belonged to them.

The misunderstanding appears to have arisen as a result of the actions of Vincent Ah San, from whom defendants acquired their property (or, technically, with whom they signed an Agreement of Sale). The late Mr. Ah San, who was related by marriage to the plaintiff, had asked and received her permission for a Chinese man who was occupying his land to use part of her adjoining tract as well. The Chinese man grew some crops on plaintiff's tract and also had a small shack there. In 1984 or 1985 the plaintiff noticed that the Chinese man was gone and that a more substantial house was being built near where his shack had been. She found out that defendants were the ones who now occupied the land in question, and told them they were occupying her land. Defendant Muamua Semeatu insists, however, that he only occupied the land within the boundaries pointed out to him by Mr. Ah San.

Had plaintiff specifically told defendants that her claim included the spot where they were building their house, defendants would have been on notice of her claim and would not have been "good faith improvers" with respect to expenditures made after they were put on notice. *See generally Roberts v. Sesepasara*, 8 A.S.R.2d 124 (1988). The plaintiff herself testified, however, that at first she did not believe that the house itself encroached on her property. Rather, she was more concerned about another structure also built by the defendants, referred to by all parties as a "garage" but actually used as a residence. Only when she had her land resurveyed in 1986, well after the defendants' house now in question had been completed, did she learn that it was on her land. Accordingly, we find that the earlier notice to defendants that they might be occupying part of plaintiff's land did not prevent them from being good faith improvers with respect to the particular house for which they now seek compensation.

Defendants are entitled to reimbursement for their actual expenses in improving the property or to the amount by which the improvements enhanced the value of the property, whichever is less. *See Roberts, supra*, and authorities cited therein. Defendants have submitted receipts showing that they spent $7,014.10 on materials. Defendant

19

Muamua Semeatu also testified that he spent $3,900 on labor, including the cost of food and transportation for the carpenters, and $715 for renting a backhoe to dig two septic tanks. Although not supported by receipts, it is difficult to imagine how the defendants could possibly have gotten the work done for less. The Court therefore finds that the defendants spent $11,629.10 in improving the property.

This amount must be reduced, however, by the amount which defendants have received from the Federal Emergency Management Agency (FEMA) and or the Territorial Emergency Management Coordinating Office (TEMCO) on account of damage to the house by Hurricane Ofa early this year. Defendant Semeatu testified that he received only about $2,000 for damage to the house, although he had received about $8,000 for damage to the "garage." The Court required him to make a post-trial submission of all documents pertinent to his disaster relief payments.

Defendants appear to have received four disaster relief grants. Two of these --- $8,009 from FEMA for repairs to an unspecified house, and $4,110 from TEMCO for household furnishings and other personal property --- are in the name of defendant Muamua Semeatu. The other two checks are to defendant Sala Semeatu. One of these is a $5,739 FEMA grant for damage to a house, and the other is a $2,985 TEMCO grant for "repairing and/or rebuilding your home and/or repairing or buying personal property and furnishings." Although this evidence is sketchy and not altogether consistent with defendant's testimony, the best we can make of it is that Muamua applied for FEMA and TEMCO grants as the owner of one house and that his wife Sala applied for such grants as the owner of another. If, as Muamua testified, the check to him for roughly $8,000 was for the "garage," then the two checks to his wife for a total of $8,734 must have been for the house with which we are now concerned.

Defendant Semeatu testified that he has postponed any repairs on the house pending the outcome of the present case. Accordingly, we find that the net cost to defendants of their improvement to plaintiff's property has been $11,629 - $8,734, or $2,895.[1] Although we have no

---

[1] Both the FEMA and the TEMCO grant letters speak in terms of using the grant money either for "repairs" to the damaged structure or for "rebuilding" (TEMCO) or "other essential housing needs" (FEMA). From this language we assume, although we are not certain, that plaintiffs will be permitted by FEMA and TEMCO to apply the grant money toward the building of another home. If defendants can show that they will have to return

20

direct evidence of the amount by which the house has enhanced the value of plaintiff's property, we take judicial notice that a tract of land with a substantial house on it is worth at least $2,895 more than a vacant lot. Even if, as plaintiff contends, the enhanced value must be assessed as of the date of the present hearing --- rather than at the time plaintiff filed suit or at the time of judgment on the merits, both of which occurred prior to the recent hurricane damage --- the evidence reflects that the value of plaintiff's property has been substantially enhanced by the presence of a foundation, two septic tanks, and a large and substantially intact residential structure. We therefore hold that defendants are entitled to compensation in the amount of $2,985.

In all other respects we reaffirm our original opinion and deny defendants' motion for reconsideration.

It is so ordered.

---

the money to the granting agencies in the event they do not use it to repair the house, they are free to do so by timely motion to amend the present order.